Howard Herley HULSTINE, Appellant,

v.

STATE of Missouri, Respondent.

No. 56392.

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

William C. Bernhardt, DeSoto, for appellant.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Criminal Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction of assault with intent to kill with malice aforethought.

Howard Herley Hulstine, with prior conviction for burglary, second degree, was charged by information for the felonious assault with malice aforethought of Joseph Wirtes on October 9, 1968, by shooting him with a 22-caliber revolver. On October 9, 1968, defendant was in an automobile with Mark Patton when they stopped at a filling station in south St. Louis, attended by Joseph Wirtes. Patton produced the pistol, announced a holdup, took Wirtes captive, and drove into Jefferson County where Wirtes was shot five times and left for dead. Wirtes survived the shooting and identified defendant and Patton as his assailants and captors. Patton pleaded guilty to a charge of felonious assault. Defendant went to trial before a jury with a theory of defense that he, too, was a captive of Patton. The jury convicted defendant; he withdrew his motion for new trial; and the court fixed his punishment at fifteen years' imprisonment.

As grounds for relief, movant asserted: (a) movant was denied an opportunity to subpoena witnesses; (b) ineffective service of legal counsel; (c) illegal search and seizure; and (d) jury was not properly instructed.

Appellant's proposed proof of (a) was that movant was not provided opportunity to subpoena witnesses, particularly Mark Patton; of (b) was that counsel failed to file an appeal, failed to move to suppress evidence, and failed to interview and present witnesses' testimony; and of (c) was that the pistol was admitted in evidence in violation of his constitutional rights. No proof was suggested on ground (d), and no proof of such allegation was offered at the hearing.

At the hearing, with respect to his asserted denial of an opportunity to subpoena witnesses, movant said he gave trial counsel, Jeremiah Nixon, and the sheriff the names of witnesses he wanted to call at his trial. He did not know where the witnesses were at the time he requested they be called. He was advised by Mr. Nixon that some of the witnesses could not be found, and that he did not know the two nurses at Jefferson Memorial Hospital suggested to be called by him.

With respect to the assertion of ineffective assistance of counsel, movant complained of the search of the car without a search warrant and seizure of the gun admitted in evidence. He also complained that counsel did not appeal effectively, and he stated he was not the driver of the car searched.

On cross-examination, movant admitted that Mark Patton was returned from the penitentiary pursuant to a writ secured by Mr. Nixon and that he testified as a witness for defendant at trial. He also admitted that he requested that his appeal (motion for new trial) be dismissed, and he disclaimed any interest in the pistol found in the search of the car.

Jeremiah Nixon, movant's trial counsel, also was called by movant. He was appointed counsel for defendant in the magistrate court and represented him through trial and the sentencing procedure. Defendant gave him a list of witnesses and they discussed the testimony that defendant hoped to elicit from each. The list contained the names: Pat Carter, 1506 Holden Avenue, Newport, Arkansas, Mrs. Sandy Henley, 2142–7 South Vermont, Torrance, California, James C. Jones, 407 North Eighth Street, St. Louis, Missouri, G. William Weier, Prosecuting Attorney, Hillsboro, Missouri, "hospital, two nurses, on October 9th, 1968," Carl Spaid, 615 East Market Street, Salinas, California, Mark Patton, Missouri State Penitentiary, "Perry and Niedert." Perry and Niedert were said to have been at the filling station in St. Louis. Mr. Nixon secured subpoenas for them which he forwarded with instructions to the sheriff in St. Louis. Addresses furnished by defendant were 617 Loughborough Avenue for Teddy Monroe Niedert and 2015 Menard Street for John Perry. The sheriff's return was "unable to catch at home." The case was rescheduled for trial and Mr. Nixon secured additional subpoenas for the two as well as subpoenas for the officers who were to look for the witnesses. Again, the sheriff's office could not locate the witnesses, and Mr. Nixon went personally in search of them. 2015 Menard Street, Perry's alleged address, was a vacant building and he found no one there; neighbors near 617 Loughborough said that Niedert was in the Marines in California. Mr. Weier was present at the trial, as was James C. Jones, an attorney for defendant in another case, pursuant to subpoena secured by Mr. Nixon.

Mr. Nixon prepared a motion for new trial and was requested by defendant to withdraw it because he wanted to plead guilty in another case. The judge determined that defendant wished counsel to withdraw the motion for new trial in the assault case tried to the jury. Mr. Brunson Hollingsworth represented defendant on a robbery charge and he advised Mr. Nixon that if the motion for new trial in the assault case was withdrawn, a plea with favorable recommendation would be entered in the robbery case.

The state adduced from Mr. Nixon that the out-of-state witnesses were sought by

defendant as character witnesses. Mr. Nixon did not move to suppress the pistol because the theory of defense was, "as indicated in Mark Patton's testimony," that defendant was a captive under control of Mark Patton who had the gun. "The existence of the gun was essential * * * if this theory that was being submitted by Mr. Hulstine could be presented at all." Further, "It was found as an incident of the arrest." The two nurses were present at the hospital when defendant and Patton were brought before Mr. Wirtes who had been shot. He and defendant discussed that "the only thing that the nurses could testify to, if we could find them, would be whether Mr. Wirtes identified Mr. Hulstine," and he already had made statements that he was with Patton as a captive of Patton. " * * * neither one of us saw much that could be used in trying to search those nurses out and find out who they were if we could."

At the time of sentencing, defendant was present with Mr. Nixon, as was the state, and the following transpired:

"THE COURT: Mr. Nixon, do you have a preliminary announcement to make to the court? MR. NIXON: Yes. The defendant, Mr. Hulstine, filed a motion for a new trial after the jury trial and we have discussed this thing very thoroughly with Mr. Hulstine and Mr. Hulstine advises me that he wishes that the motion be withdrawn, this motion for a new trial. We are, therefore, withdrawing the motion for a new trial, knowing, I might further add, full well, the withdrawal of this motion, that this makes the finding of the jury final and unappealable.

"THE COURT: And, Mr. Nixon, and, Defendant Hulstine, we understand, then, the next step in this procedure will be for the Court to pronounce judgment and sentence upon you; do you understand that, Mr. Hulstine? THE DEFENDANT: Yes, sir.

"MR. NIXON: If I may interrupt, let the record show here that Mr. Hulstine— do you concur with the statement that I made to the Court? THE DEFENDANT: Yes.

"MR. NIXON: And you have instructed me that you want this motion withdrawn? THE DEFENDANT: Yes.

"THE COURT: Let me ask you a few questions, Defendant Howard Hulstine. Your attorney, Mr. Nixon, on March 24, 1970, filed on your behalf a motion for a new trial. In this motion he made certain allegations that the trial court committed certain errors in the conduct of your trial. I want to explain to you that under the law of the State of Missouri counsel, your counsel, was entitled to file this motion for a new trial on your behalf; that your proposed withdrawal of this motion for a new trial here today means that this Court will not be called upon to rule on this motion for a new trial; do you understand that? THE DEFENDANT: Yes.

"THE COURT: And do you understand that should the Court have taken up and ruled against you on this motion for a new trial under the law your counsel, Mr. Nixon, would have had the right to make an appeal on your behalf to the Supreme Court of the State of Missouri; do you understand that? THE DEFENDANT: Yes.

"THE COURT: And do you understand that by your waiving of your rights under this motion for a new trial, you waive this possibility of an appeal to the Supreme Court of the State of Missouri; do you understand that? THE DEFENDANT: Yes.

"THE COURT: Now, have you—to continue my questions to you, Mr. Hulstine —have you had the assistance and advice of Mr. Nixon, your counsel, before you reached this decision to withdraw your motion for a new trial? THE DEFENDANT: Yes.

"THE COURT: Has anyone threatened you or coerced you in any manner whatsoever to withdraw your motion for a new

trial? THE DEFENDANT: No. THE COURT: Has anyone made any promises or deals offered to you, either the Prosecuting Attorney or your own attorney, Mr. Nixon, in order to induce you to voluntarily withdraw this motion for a new trial? THE DEFENDANT: No.

"THE COURT: And one final question: Is your decision to waive your motion for a new trial freely and voluntarily done? THE DEFENDANT: Yes, sir.

"THE COURT: Let the record reflect that the Court accepts the waiver of the right of a motion for a new trial by the defendant. Defendant Howard Herley Hulstine, do you have any legal cause why this Court should not now pronounce judgment and sentence upon you? THE DEFENDANT: No, Your Honor."

At the conclusion of the hearing, in denial of relief, the Court found that movant was allowed to call and did call Mark Patton as a witness at his trial and had the benefit of his testimony on the stand; that movant requested other witnesses to be called and Mr. Nixon made every effort to contact those alleged to be in the State of Missouri and was unable to procure them; that movant had effective assistance of counsel; that movant freely and voluntarily waived his right of appeal; that the pistol was used in evidence as part of the defense, i. e., that movant was a captive of Mark Patton; that there was no evidence or complaint with respect to failure to properly instruct the jury.

■ Appellant contends, point I, that he was denied a fair trial because "readily available witnesses were not called," and, point II, that he was denied a fair trial due to "ineffective counsel at his trial."

With respect to point I, there is no question that Mark Patton was a witness in defendant's behalf at his trial. There is evidence that the nurses could testify only to an identification which was admitted by defendant, and that he agreed they need not be sought. Two of his witnesses never could be found, despite unusual efforts by counsel, and the remainder of appellant's witnesses were nonresidents and, if present, would be offered only as to the character of defendant.

■ It is argued under point II that Mr. Nixon was "ineffectual in that he was too easily persuaded to dismiss his Motion for New Trial and the consequent Appeal." It is asserted that counsel on the robbery charge, Mr. Hollingsworth, is the judge's son-in-law and the "deal" he made for a plea on the robbery charge with concurrent sentencing caused Mr. Nixon to persuade Hulstine to forgo his appeal. This assertion and argument is refuted by the detailed record made at the time defendant withdrew his motion for new trial, and such record supports the court's finding on the motion that the motion for new trial was withdrawn freely and voluntarily.

This case has been stated in detail to demonstrate the complete lack of merit in movant's charges; and it may not be said on such record that the findings and judgment of the trial court in denial of relief to movant are erroneous in any degree.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.